UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| BIN SUN, | ) | NO.  CV-07-0180-AMJ |
|         Plaintiff, | ) | |
|    -vs- | ) | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL, et al., | ) | |
|        Defendants. | ) | |

Before the Court is Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Ct. Rec. 13) and Plaintiff's Cross-Motion for Summary Judgment (Ct. Rec. 24). Defendants request an order dismissing Plaintiff's suit for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or an order granting summary judgment in Defendants' favor because there are no genuine issues as to any material fact and Defendants are entitled to a judgment as a matter of law. (Ct. Rec. 14). Plaintiff moves for summary judgment, asserting that there is no disputed fact that Defendants failed to adjudicate Plaintiff's I-485 application within a reasonable period of time and he is thus entitled to prompt adjudication of his I-485 application. (Ct. Rec. 25).

**I.    FACTUAL BACKGROUND**

On June 6, 2007, Plaintiff filed a Petition for Writ of Mandamus seeking an order compelling Defendants to adjudicate his pending application for adjustment of status to lawful permanent resident ("I-485 application").  (Ct. Rec. 1).

Plaintiff is a citizen and national of China who entered the United States in May 1996.  (Ct. Rec. 1 at 3-4; Ct. Rec. 15 ¶ 1). Plaintiff was admitted in valid B-1 nonimmigrant status.  (Ct. Rec. 1 at 4).  From March 3, 1997, though July 1, 2004, Plaintiff was in F-1 student status.  (Ct. Rec. 1 at 4; Ct. Rec. 15 ¶ 1).  In May 2004, Plaintiff married a United States citizen, and, on July 1, 2004, submitted an I-485 application to the United States Citizenship and Immigration Services ("USCIS") for adjustment of his status based on his marriage to a United States citizen.  (Ct. Rec. 1 at 4; Ct. Rec. 15 ¶ 2).

On July 9, 2004, an FBI Name Check for Plaintiff was initiated by USCIS.  (Ct. Rec. 15 ¶ 6).  The FBI's National Name Check Program received USCIS's request for a name check on Plaintiff on July 14, 2004.  (Ct. Rec. 15 ¶ 7).  On November 15, 2004, Plaintiff and his wife attended an adjustment of status interview at the USCIS Spokane District Office.  (Ct. Rec. 19 at 3).  Plaintiff was advised that action had been taken on his application, but that the background check was still pending.  (Ct. Rec. 19 at 3).

The USCIS cannot adjudicate Plaintiff's pending I-485 application until all security checks are completed.  (Ct. Rec. 15 ¶ 6).
///

Plaintiff's I-485 application remains pending because the FBI has not completed his name check.

**II.   SUMMARY OF ARGUMENTS**

    **A.   Defendants' Arguments**

      Defendants argue that the Court should dismiss Plaintiff's complaint for lack of subject matter jurisdiction because jurisdiction does not exist under either the Mandamus Act, 28 U.S.C. § 1361, or the Administrative Procedures Act ("the APA"), 5 U.S.C. § 701, *et seq.*, the two jurisdictional statutes pled in this action.  (Ct. Rec. 1 ¶ 1).  Defendants assert that Plaintiff failed to meet his burden of demonstrating that the Court possesses jurisdiction to entertain this suit.  (Ct. Rec. 14 at 6-14).  Defendants alternatively request that, if this Court determines it has jurisdiction, the Court should still dismiss this action by granting Defendants' Motion for Summary Judgment because there is no genuine dispute that the alleged delay in adjudicating Plaintiff's claim is reasonable.  (Ct. Rec. 14 at 15-25).

    **B.   Plaintiff's Arguments**

      Plaintiff argues that the Court has subject matter jurisdiction over his claims pursuant to the Mandamus Act (28 U.S.C. § 1361), the federal question statute (28 U.S.C. § 1331), and the APA (5 U.S.C. §§ 701 *et seq.*, 555(b)).  (Ct. Rec. 19 at 6-12).  Plaintiff asserts that the Mandamus Act provides jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to Plaintiff.  (Ct. Rec. 19 at 6).  Plaintiff additionally asserts that, pursuant to the APA, a court may "compel ///

1  agency action unlawfully withheld or unreasonably delayed." (Ct. Rec.
2  19 at 6).

3      Plaintiff agrees that this case presents no genuine issues of
4  material fact that must be resolved at trial. (Ct. Rec. 19 at 12; Ct.
5  Rec. 25 at 10; Ct. Rec. 5 at 2). However, Plaintiff argues that there
6  is no genuine issue of material fact that Defendants failed to
7  adjudicate Plaintiff's I-485 application within a reasonable period of
8  time. (Ct. Rec. 19 at 12-13; Ct. Rec. 25 at 10-11). Therefore,
9  Plaintiff filed a cross-motion for summary judgment requesting that
10 the Court issue an order granting his petition and compelling
11 Defendants to process his I-485 application. (Ct. Rec. 19 at 13; Ct.
12 Rec. 25).

13 **III.  ANALYSIS**

14     **A.  Defendants' Motion to Dismiss**

15     The Court cannot reach the merits of Plaintiff's Complaint unless
16 there is a basis for subject matter jurisdiction. Pursuant to Fed. R.
17 Civ. P. 12(b)(1), a district court must dismiss an action if the court
18 lacks jurisdiction over the subject matter of the suit. Fed. R. Civ.
19 P. 12(b)(1). The party seeking to invoke federal jurisdiction bears
20 the burden of establishing that jurisdiction exists. *Scott v.*
21 *Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). A complaint will be
22 dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction
23 if (1) the cause does not "arise under" any federal law or the United
24 States Constitution, (2) there is no cause or controversy within the
25 meaning of that constitutional term, or (3) the cause is not one
26 ///

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

described by any jurisdictional statute.  *Baker v. Carr*, 369 U.S. 186, 198 (1962).

Similarly, Rule 12(h)(3) provides, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Although Defendants are the movants, the party invoking federal jurisdiction, Plaintiff here, has the burden of showing that jurisdiction is proper.  *Thornhill Publishing Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  The court presumes a lack of jurisdiction until the party asserting jurisdiction proves otherwise.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994).

**1.    Mandamus Jurisdiction**

The Mandamus Act provides district courts with original jurisdiction in "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."  *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (*citing Will v. United States*, 389 U.S. 90, 95 (1967)).  Mandamus is "available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available."  *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (*quoting Patel v. Reno*, 134 F.3d 1078, 1084 (9th Cir.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

1998)).  Mandamus cannot be used to compel or review discretionary acts of government officials.  *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1180 (9th Cir. 1983); *Wilmor v. Boyle*, 403 F.2d 811, 816 (9th Cir. 1968).

In this case, Plaintiff seeks to compel Defendants to expedite adjudication of his I-485 application.  (Ct. Rec. 1 at 14).  Adjudication of such applications is governed by section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255.  Section 1255(a) provides that an alien's status "may be adjusted by the Attorney General, **in his discretion** and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence."  8 U.S.C. § 1255(a) (emphasis added).

Section 242 of the Act, codified at 1252(a)(2)(B), additionally provides that:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review-- (i) any judgment regarding the granting of relief under section . . . 1255, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title [8 U.S.C. §§ 1151 *et seq.*] to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B).  This statutory framework puts adjustment of an alien's status within the discretion of the Attorney General and designated agencies.

Plaintiff does not dispute that the ultimate determination on the I-485 application is within Defendants' discretion.[1]  (Ct. Rec. 19 at

---

[1]The decision whether to grant or deny Plaintiff's I-485 application is discretionary.  *See, Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004) (agreeing with the Attorney General's Manual on the APA, which states that Section

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

11).  Rather, Plaintiff argues that Defendants are without discretion to unreasonably delay the adjudication of his I-485 application, and that the Court has mandamus jurisdiction to expedite adjudication. (Ct. Rec. 19 at 11-12).  The statutory provisions, however, contain no time limit for adjudicating I-485 applications.  Likewise, the relevant regulatory framework does not impose a specified time limit on USCIS's adjudication of the application.  *See,* 8 C.F.R. §§ 245, *et seq.*

When a person applies to USCIS for adjustment of status to lawful resident, the agency conducts several forms of security and background checks to ensure that the alien is eligible for that benefit and that he is not a risk to national security or public safety.  (Ct. Rec. 15 ¶ 3).  The background checks include (1) an FBI fingerprint check, (2) a check against the Interagency Border Inspection System watch list, and (3) an FBI name check.  (Ct. Rec. 15 ¶ 3).  Neither party cites to a statute or regulation governing the pace within which these checks must be completed.

Plaintiff does, however, cite to section 555(b) of the APA, arguing that it imposes a "reasonable time" requirement for the adjudication of the I-485 application.  5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and **within a reasonable time**, each agency shall proceed to conclude a matter presented to it." (emphasis added)). Plaintiff argues that this "reasonable time" limitation on

---

706(1) "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'").

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

adjudication is nondiscretionary, and that Defendants should be compelled under the Mandamus Act to complete adjudication.

Many federal district courts agree that the pace at which USCIS adjudicates I-485 applications is nondiscretionary. *See, e.g.*, *Guoping Ma v. Gonzalez*, 2007 WL 1655188, at 3 (W.D. Wash. 2007); *Loo v. Ridge*, 2007 U.S. Dist. LEXIS 17822, at 9 (E.D. N.Y. 2007) (noting that adjudicating adjustment of status application is not at discretion of defendants because defendants are required to do so); *Razaq v. Poulos*, 2007 U.S. Dist. LEXIS 770, at 12 (N.D. Cal. 2007) (mandamus jurisdiction was appropriate because "the absence of a statutorily specified deadline, by itself, [does not] change[ ] the character of the government's duty from ministerial to discretionary."); *Liu Duan v. Zamberry*, 2007 U.S. Dist. LEXIS 12697, at 13 (W.D. Pa. 2007) ("Although the speed of processing may be 'discretionary' in the sense that it is determined by choice, and that it rests on various decisions that Defendants may be entitled to make, it is not discretionary in the manner required by the jurisdiction-stripping language of the IIRIRA."); *Yu v. Brown*, 36 F. Supp. 2d 922, 932 (D. N.M. 1999) ("[A]djudication must occur within a reasonable time.  A contrary position would permit [indefinite delay].  Congress could not have intended to authorize potentially interminable delays."); *Aboushaban v. Mueller*, 2006 U.S. Dist. LEXIS 81076, at 4-5 (N.D. Cal. 2006) (defendants have duty to adjudicate plaintiff's application, and to do so within reasonable time).

*///*

*///*

Other district courts have held that the statutory framework precludes judicial review of the pace at which the government reviews change of status applications. *See, e.g.*, *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1353 (S.D. Fla. 2007) (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of pace at which adjustment of status application is processed, not merely USCIS's ultimate decision on the issue); *Safadi v. Howard*, 466 F. Supp. 2d 696, 698 (E.D. Va. 2006) (holding that Section 1252(a)(2)(B) precludes judicial review of any discretionary decision or action of USCIS, including pace at which adjustment applications proceed); *Jiuru Hu v. Chertoff*, 2007 U.S. Dist. LEXIS 40489, at 12 (E.D. Cal. 2007) (pace at which USCIS adjudicates I-485 applications is discretionary)[2]; *Li v. Chertoff*, 482 F. Supp. 2d 1172, 1178 (S.D. Cal. 2007) (finding that it had no subject matter jurisdiction to entertain plaintiff's mandamus petition because "as long as USCIS is making reasonable efforts to complete the adjudication, the pace required to complete that process is committed to USCIS's discretion.").

Although the Ninth Circuit has not spoken on this exact issue, this Court, and several others as indicated above (*see, supra*), finds that Defendants have a nondiscretionary duty to adjudicate Plaintiff's I-485 application within a reasonable time. Defendants can therefore be compelled by a writ of mandamus to complete adjudication. The

---

[2]However, in *Jiuru Hu*, the court commented that "[s]hould the USCIS refuse to take any steps whatsoever to resolve a LPR application or employ procedures such that no decision will issue, it might legitimately be said that the agency's inaction was not the result of an exercise of discretion at all. The agency would then not be operating within its statutory discretion at all but rather abdicating its statutory duty to adjudicate applications, and under those circumstances this court could have jurisdiction to review the agency's actions." *Jiuru Hu*, 2007 U.S. Dist. LEXIS 40489, at 12-13 (citing *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973)).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

1  Court thus has jurisdiction over Plaintiff's claim under the Mandamus

2  Act.

3           2.    The APA

4       The Court likewise has authority to judicially review Defendants'

5  actions under the APA.  As cited above, the APA provides that "[w]ith

6  due regard for the convenience and necessity of the parties or their

7  representatives and within a reasonable time, each agency shall

8  proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).

9       Section 706(1) of the APA authorizes a court to "compel agency

10 action unlawfully withheld or unreasonably delayed."  5 U.S.C. §

11 706(1).  However, a claim under § 706(1) can proceed only where a

12 plaintiff asserts that an agency failed to take a discrete agency

13 action that it is required to take.  *Norton*, 542 U.S. at 64.  The APA

14 explicitly exempts from judicial review those actions "committed to

15 the agency discretion by law."  5 U.S.C. 701(a).

16      As determined above, Defendants have a nondiscretionary duty to

17 adjudicate Plaintiff's application within a reasonable time.  (*See,*

18 *supra*).  Although the relevant statutes and regulations are notably

19 devoid of time limitations on adjudicating change of status

20 applications, the Court finds the "reasonable time" standard drawn

21 from Section 555(b) is a sufficient guide to review the agency's

22 action.  Pursuant to the APA, in conjunction with the federal question

23 statute, Plaintiff has a right to have his I-485 application

24 adjudicated within a reasonable time.  Accordingly, the Court has

25 subject matter jurisdiction over Plaintiff's claim under 28 U.S.C. §

26 1331 in conjunction with 5 U.S.C. § 555(b).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

Defendants argue that the Court should dismiss Plaintiff's complaint for lack of subject matter jurisdiction. (Ct. Rec. 131). Contrary to Defendants' assertions, the Court possesses jurisdiction to entertain this suit under the Mandamus Act, 28 U.S.C. § 1361, and pursuant to 28 U.S.C. § 1331 in conjunction with the APA. Accordingly, Defendants' motion to dismiss Plaintiff's action for lack of subject matter jurisdiction is denied.

### B.    Cross-Motions for Summary Judgment

Defendants argue, in the alternative, that summary judgment should be entered in their favor because there is no genuine dispute that the alleged delay in adjudicating Plaintiff's claim is reasonable. (Ct. Rec. 14 at 15-25). Plaintiff moves for summary judgment, asserting that there is no dispute of fact that Defendants failed to adjudicate Plaintiff's I-485 application within a reasonable period of time. (Ct. Rec. 19 at 12-13; Ct. Rec. 25 at 10-11). The parties thus disagree as to whether the alleged delay is reasonable.

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party:

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a

///

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.*  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

1    Finally, to demonstrate a genuine issue, the opposing party "must
2    do more than simply show that there is some metaphysical doubt as to
3    the material facts.  Where the record taken as a whole could not lead
4    a rational trier of fact to find for the nonmoving party, there is no
5    'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation
6    omitted).

7        The parties agree that this case presents no genuine issues of
8    material fact that must be resolved at trial.  (Ct. Rec. 5 at 2; Ct.
9    Rec. 19 at 12; Ct. Rec. 25 at 10).  With respect to both parties'
10   Motions for Summary Judgment, the question before this Court is
11   whether there has been an unreasonable delay by Defendants in
12   processing Plaintiff's I-485 application.  Here, in the Court's well-
13   formed opinion after a careful review of the record in light of
14   applicable law, there is no genuine dispute that the delay in
15   processing Plaintiff's I-485 application is not reasonable.  The delay
16   occurring here is unreasonable.

17       Section 706(1) of the APA authorizes a court to "compel agency
18   action unlawfully withheld or unreasonably delayed."  5 U.S.C. §
19   706(1).  Accordingly, Section 706 "leaves in the courts the discretion
20   to decide whether agency delay is unreasonable." *Forest Guardians v.*
21   *Babbitt,* 174 F.3d 1178, 1190 (10th Cir. 1999).  The Ninth Circuit has
22   adopted a six-factor test for determining when an agency delay is
23   unreasonable under 5 U.S.C. § 706(1):

24       (1) the time agencies take to make decisions must be governed by
         a 'rule of reason';
25
26       (2) where Congress has provided a timetable or other indication
         of the speed with which it expects the agency to proceed in the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

*Brower v. Evans,* 257 F.3d 1058, 1068 (9th Cir. 2001) (quoting

*Telecomms. Research & Action v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C.

Cir. 1984) (six factors referred to as the "*TRAC factors*").

### 1. First *TRAC* Factor

The first *TRAC* factor requires an agency to govern decision-making with a rule of reason.  Defendants argue that the FBI's "first-in, first-out" policy is deserving of deference.  (Ct. Rec. 14 at 17-19).  Defendants assert that Plaintiff's name check has undergone an initial electronic check and a secondary manual name search.  However, Defendants indicate that because the check is identified as possibly being the subject of one or more FBI records, it is currently in a processing queue to be reviewed by an analyst who must retrieve and review the FBI records, which may be located in an FBI field office or overseas legal attache office.  (Ct. Rec. 14, at 9-10 n. 1).

Nevertheless, Defendants fail to provide evidence confirming that Plaintiff's case has been processed in a "first-in, first-out" fashion, nor have Defendants provided any evidence as to why the FBI needs over three years to conduct a name check on Plaintiff.  *See,*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

1  *Chen v. Chertoff*, 2007 WL 2570243, at 4 (W.D. Wash. 2007) (in

2  discussion of first *TRAC* factor, found significant that Defendants

3  provided no evidence confirming Plaintiff's case had been processed in

4  a "first in, first out" fashion and that FBI did not substantiate why

5  it needed many years to conduct check).

6       **2.  Second *TRAC* Factor**

7       The second *TRAC* factor requires deference to a statutory or

8  regulatory timetable.  Defendants argue that there is neither a

9  statutory nor regulatory timetable in place for the FBI name check or

10 USCIS's adjudication of an application to adjust status.  (Ct. Rec. 14

11 at 19-20).  Defendants assert that in the absence of any statutory or

12 regulatory guidelines, the Court should consider the factors that

13 contribute to the backlogs faced by the FBI and USCIS.  (Ct. Rec. 14

14 at 20; Ct. Rec. 15 ¶¶ 9-17 (As a result of FBI's post-9/11

15 counterterrorism efforts, number of FBI name checks has grown; in

16 response to heightened national security concerns, process used to

17 conduct name checks for USCIS was made more thorough; and, in December

18 of 2002 and January of 2003, USCIS resubmitted 2.7 million name check

19 requests to FBI in addition to regular submissions)).

20      However, the absence of a statutory or regulatory timetable does

21 not mean that the agency can take an infinite amount of time to

22 process Plaintiff's application.  *Chen v. Chertoff*, 2007 WL 2570243,

23 at 4 (W.D. Wash. 2007).  Furthermore, "[a]lthough Congress has not

24 established a mandatory time frame for the USCIS to complete the

25 adjudication, Congress sets a normative expectation in 'The

26 Immigration Services and Infrastructure Improvements Act of 2000' of a

1   reasonable processing time for an immigrant benefit application as no
2   more than 180 days after initial application." *Konchitsky v.*
3   *Chertoff,* 2007 WL 2070325, at 4 (N.D. Cal. 2007) (citing 8 U.S.C. §
4   1571); *Abbasfar v. Chertoff,* 2007 WL 2409538, at 3 (N.D. Cal. 2007)
5   ("8 U.S.C. § 1571 provides a meaningful standard for the pace of
6   adjudication of adjustment of status applications"); *Chen v. Chertoff*,
7   2007 WL 2570243, at 4 (W.D. Wash. 2007).

8       **3.   Third and Fifth *TRAC* Factors**

9       The third *TRAC* factor provides that delays are less tolerable
10  when human health and welfare are at stake, as opposed to economic
11  regulation.  In a case involving the delay of processing an I-485
12  application, human health and welfare are at stake.  *See, Singh v.*
13  *Still,* 470 F. Supp. 2d 1064, 1069 (N.D. Cal. 2006) (finding human
14  health and welfare to be at stake in case involving delay of I-485
15  application to adjust status); *Chen v. Chertoff*, 2007 WL 2570243, at 5
16  (W.D. Wash. 2007).  Defendants argue that this third factor overlaps
17  with the fifth *TRAC* factor, the nature and extent of the interests
18  prejudiced by the delay.  (Ct. Rec. 14 at 20).  The Court shall
19  consider both factors here.

20      Defendants characterize the prejudice to Plaintiff as mere
21  inconvenience, and point out that Plaintiff may travel abroad and work
22  within the United States during the pendency of his application.  (Ct.
23  Rec. 14 at 20).  Defendants emphasize that Plaintiff's interests are
24  minimal as compared to the security interests of the nation,
25  particularly in the post-9/11 era.  (Ct. Rec. 14 at 20-21).  Plaintiff
26  alleges prejudice by the delay due to an inability to accrue time to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

1  be eligible for naturalization as a citizen of the United States.

2  (Ct. Rec. 19 at 4).  Plaintiff additionally asserts that he desires to

3  travel internationally for family and personal reasons, but that he

4  has been unable to do so due to the pending status of his application.

5  (Ct. Rec. 19 at 4).

6       The prejudice to Plaintiff is more than "mere inconvenience" as

7  alleged by Defendants.  The delay impacts Plaintiff's ability to seek

8  United States citizenship and all the rights and privileges attendant

9  thereto.  *See, Singh,* 470 F. Supp. 2d at 1070.

10      **4.  Fourth *TRAC* Factor**

11      The fourth *TRAC* factor requires the Court to consider the effect

12  of expediting delayed action on agency activities of a higher or

13  competing priority.  Defendants argue that expediting delayed agency

14  action will intrude on the agency's discretion to fulfill its highest

15  priority of safeguarding the nation.  (Ct. Rec. 14 at 21).  Defendants

16  also contend that moving some individuals to the front of the queue

17  would simply move that group ahead of others who also had been

18  waiting, resulting in no net gain in processing.  (Ct. Rec. 14 at 22-

19  23).  Finally, Defendants assert that ordering Plaintiff's case to the

20  front of the line would set the precedent that more litigious

21  applicants are most likely to be given priority in processing at the

22  expense of other applicants that may have waited even longer, but may

23  not have the resources to file suit.  (Ct. Rec. 14 at 23).

24      Plaintiff argues that Defendants have not asserted that he poses

25  a risk to national security, that his marriage to a U.S. citizen wife

26  is not bona fide, or that he is otherwise inadmissible for adjustment

of status to lawful permanent resident status.  (Ct. Rec. 19 at 22).

To the contrary, Plaintiff asserts that he has strong positive

factors, including a U.S. citizen spouse, residence of long duration

in the U.S. and compliance with the law.  (Ct. Rec. 19 at 15).

Moreover, an order compelling Defendants to adjudicate Plaintiff's I-

485 application does not leave Defendants without a remedy should

facts indicate Plaintiff is, in fact, a national security threat.

*Singh,* 470 F. Supp. 2d at 1070 (noting that a court order requiring

adjudication of I-485 application does not leave Respondents without a

remedy should facts suggest Plaintiff is a national security threat).

Defendants always have the option of moving to rescind the grant of

residency or to initiate removal proceedings if that situation were to

arise.  Defendants have not demonstrated, with any specificity, how

expediting Plaintiff's application would threaten the agency's ability

to safeguard the nation.

### 5.  Sixth *TRAC* Factor

The sixth and last *TRAC* factor notes that the Court need not find

any impropriety on the agency's part in order to hold that agency

action is unreasonably delayed.  While Defendants indicate they have

taken comprehensive steps to reduce delays in the name check process

(Ct. Rec. 14 at 24), Defendants fail to demonstrate why they need over

three years to conduct a name check on Plaintiff, a resident of the

United States since 1996.

Defendants fail to set forth any facts specific to Plaintiff's

name check.  "What constitutes an unreasonable delay in the context of

immigration applications depends to a great extent on the facts of the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 19

particular case." *Gelfer v. Chertoff,* 2007 WL 902382 at 2 (N.D. Cal.
2007) (citation omitted).   District courts within the Ninth Circuit in
similar cases have denied Rule 12(b)(6) motions to dismiss brought by
the Government where USCIS pointed to the FBI's failure to complete
the name check, and where there were no reasons why the application
was "particularly troublesome." *Gelfer*, 2007 WL 902382 at 2 (more
than two-year delay not reasonable as a matter of law); *see also Chen*,
2007 WL 2570243, at 7 (more than three year delay, without any
particularized explanation, is unreasonable); *Konchitsky,* 2007 WL
2070325, at 6 ("without a particularized explanation for the delay . .
. more than two year delay of plaintiff's application [is]
unreasonable as a matter of law"); *Liu v. Chertoff,* 2007 WL 2023548 at
4 (E.D. Cal. 2007) (two-and-a-half year delay not reasonable as matter
of law, noting absence of "a more particular explanation by Defendants
as to the cause of the delay," despite evidence of large volume of
applications received and extensive background checks required to
process them); *Alkenani v. Barrows,* 356 F. Supp. 2d 652, 657 n. 6
(N.D. Tex. 2005) (court, in dicta, suggested that "delays
approximating two years may be unreasonable."); *Qiu v. Chertoff,* 2007
WL 1831130, at 3 (N.D. Cal. 2007) (no explanation, other than pending
FBI name check, why application "stagnant" for three years); *Huang v.
Chertoff,* 2007 WL 1831105, at 2 (N.D. Cal. 2007) (despite national
security concerns and increased security checks since 9/11, more than
two-year delay is unreasonable as matter of law if there is no
particular explanation as to cause of delay); *Singh,* 470 F. Supp. 2d
///

1  at 1069 (noting that "the mere invocation of national security is not

2  enough to render agency delay reasonable per se.").

3       Plaintiff has waited over three years for a decision, without any

4  particularized explanation from USCIS for the delay.[3]  Taking into

5  consideration the foregoing facts and law, the Court concludes that

6  there is no genuine dispute that the delay in processing the I-485

7  application in this case is not reasonable, and Plaintiff is entitled

8  to the relief he requests.  (Ct. Rec. 1).

9  **IV.   CONCLUSION**

10      The Court has subject matter jurisdiction over Plaintiff's claim

11 pursuant to the Mandamus Act, 28 U.S.C. § 1361, and under 28 U.S.C. §

12 1331 in conjunction with the APA.

13      Moreover, this case presents no genuine issues of material fact

14 that must be resolved at trial.  (Ct. Rec. 5 at 2; Ct. Rec. 19 at 12;

15 Ct. Rec. 25 at 10).  Based on the undisputed facts and evidence, the

16 Court concludes that the delay in processing Plaintiff's I-485

17 application is unreasonable.  Accordingly, Plaintiff's Motion for

18 Summary Judgment (**Ct. Rec. 24**) is **GRANTED** and Defendants' Motion to

19 Dismiss or, in the alternative, Motion for Summary Judgment (**Ct. Rec.**

20 **13**) is **DENIED**.

21 ///

22 ///

23 _____

24      [3]Plaintiff filed an I-485 application on July 1, 2004.  (Ct. Rec. 15 ¶ 2).  On
   July 9, 2004, an FBI Name Check for Plaintiff was initiated by USCIS.  (Ct. Rec. 15 ¶
   6).  The FBI's National Name Check Program received USCIS's request for a name check

25 on Plaintiff on July 14, 2004, and has not yet completed this name check.  (Ct. Rec.
   15 ¶ 7).  On November 15, 2004, Plaintiff and his wife attended an adjustment of status

26 interview at the USCIS Spokane District Office.  (Ct. Rec. 19 at 3).  Plaintiff was
   advised that action had been taken on his application, but that the background check
   was still pending.  (Ct. Rec. 19 at 3).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 21

1    **Defendants are ordered to complete the adjudication of**
2    **Plaintiff's pending I-485 application within forty-five (45) days from**
3    **the date of this order.**  *See*, 5 U.S.C. § 706(1).

4    **IT IS SO ORDERED.**  The District Court Executive is directed to
5    enter this Order, provide copies to counsel, **enter judgment in favor**
6    **of Plaintiff and against Defendants** and **CLOSE** the file.

7    **DATED** this _____15th_____ day of November, 2007.

8

9    _____S/Larry M. Boyle_____
         THE HONORABLE LARRY M. BOYLE
10       UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 22